# EXHIBIT A

## IN THE IOWA DISTRICT COURT FOR DUBUQUE COUNTY

| | |
|---|---|
| MARK SCHNEE,<br><br>   Plaintiff,<br><br>vs.<br><br>UNITED RENTALS (NORTH AMERICA), INC.,<br><br>   Defendants. | No. LACV106095<br><br><br><br>ORIGINAL NOTICE |

TO THE ABOVE-NAMED DEFENDANT(S):   **UNITED RENTALS (NORTH AMERICA), INC.**

   You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as the defendant in this action. A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Brooke Timmer and Whitney Judkins of Fiedler & Timmer, P.L.L.C., whose address is 8831 Windsor Parkway, Johnston, Iowa 50131. Their phone number is (515) 254-1999; facsimile number (515) 254-9923.

   You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Dubuque County. If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

   If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (319) 833-3332. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

           CLERK OF COURT<br>           Dubuque County Courthouse<br>           Dubuque, Iowa

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

# STATE OF IOWA JUDICIARY

*Case No.* LACV106095

*County* Dubuque

*Case Title* SCHNEE V UNITED RENTALS (NORTH AMERICA) INC

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(319) 833-3332** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* 04/21/2017 12:23:26 PM



*District Clerk of* Dubuque          *County*

/s/ Shelly Donovan

IN THE IOWA DISTRICT COURT FOR DUBUQUE COUNTY

| MARK SCHNEE, | NO. _____ |
|---|---|
| Plaintiff, | |
| vs. | |
| UNITED RENTALS (NORTH AMERICA), INC., | **PETITION AND JURY DEMAND** |
| Defendant. | |

COMES NOW the Plaintiff, and for his cause of action states the following:

## INTRODUCTION

1.      This is an action under the Iowa Civil Rights Act, challenging Defendant's illegal disability discrimination and retaliation against Plaintiff.

2.      Plaintiff Mark Schnee is a resident of Dubuque County, Iowa.

3.      Defendant United Rentals (North America), Inc. is a Delaware corporation doing business in Dubuque County, Iowa.

4.      The acts about which Plaintiff complains occurred in Dubuque County, Iowa.

## PROCEDURAL REQUIREMENTS

5.      On June 15, 2016, within 300 days of the acts of which he complains, Plaintiff filed charges of employment discrimination against Defendant with the Iowa Civil Rights Commission.

6.      On January 27, 2017, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Plaintiff's charges of discrimination against Defendant.

1

## FACTUAL BACKGROUND

7.      In approximately November 2004, Defendant United Rentals (North America), Inc. ("United Rentals") hired Mark Schnee as a Sales Representative at its Dubuque, Iowa location.

8.      On February 7, 2013, Mark suffered a traumatic brain injury ("TBI") in a snowmobiling accident.

9.      The accident damaged the right frontal lobe of Marks' brain.

10.     As a result of the TBI, Mark lost the ability to walk and feed himself for some time.

11.     Because of the TBI, Mark's ability to learn new information; his memory; and his ability to focus, multitask, and process tasks were substantially limited indefinitely.

12.     Following rehabilitation and physical therapy, Mark returned to work in approximately late April 2013.

13.     In approximately late 2012, United Rentals had begun using a new computer system called Salesforce.com ("SFDC").

14.     Because Mark's TBI makes it difficult for him to learn new information, he experienced difficulties working with the new computer system after he returned to work.

15.     Mark asked Defendant for additional training on the system several times following his return to work, but Defendant never provided him any training or assistance.

16.     On August 27, 2014, Defendant disciplined Mark with a First Written Warning.

17.     The warning reprimanded Mark for his response to Branch Manager Kasey Farr correcting an order that had been entered into the system incorrectly.

18.     Mark was frustrated and stressed because Defendant was not providing him with advice or help regarding the system.  Mark apologized to Mr. Farr for his response to Mr. Farr's correction.

2

19.    On December 15, 2014, Defendant disciplined Mark with another First Written Warning.

20.    The warning reprimanded Mark for failing to document things correctly on SFDC, but Defendant still refused to give Mark any additional training on SFDC.

21.    The warning also accused Mark of failing to plan and make the minimum number of daily calls he was required to make for the week of December 1 through 5.

22.    However, in 2014, Mark's sales were higher than any previous year, which would not have been possible if he was not making sufficient sales calls.

23.    In late May or early June 2015, Mark asked District Sales Manager Jamie Meyer for help and training on SFDC.

24.    Mr. Meyer told Mark, "I can't treat you any differently than I treat everyone else!"

25.    On June 4, 2015, Mark was in Wisconsin making sales calls when another employee called Mark and told him Mr. Meyer and District Manager Dan Cioni, were going to be at the Dubuque branch at 1:00 to have a sales meeting with Mark.

26.    No one told Mark there was a sales meeting planned with him that day, so he had no time to prepare for the meeting before he returned to the Dubuque branch.

27.    Mr. Meyer and Mr. Cioni made it clear that they were upset with Mark for not being properly prepared for the sales meeting.

28.    On June 10, 2015, Mr. Meyer and Mr. Cioni gave Mark a Final Written Warning. The disciplinary action claimed Mark was unprepared for the June 4 meeting, that he was "not performing up to expectations," and that he was not using SFDC appropriately.

29.    At the end of the meeting, Mr. Meyer threatened Mark with termination if he did not figure things out soon and accused Mark of falsifying information he put on SFDC.

3

30.     Mark asked Mr. Meyer and Mr. Cioni if they could reassign him to another position if they did not believe he could perform his current job.

31.     Mr. Meyer and Mr. Cioni told Mark to contact Human Resources.

32.     Mark contacted Human Resources and took FMLA leave for his disability from June 18, 2015, through September 10, 2015, when his FMLA leave expired.

33.     Mark then took additional disability leave after his FMLA leave expired.

34.     On November 24, 2015, Mark's doctor released him to return to work on December 28 with restrictions to work no more than 5 days per week, 8 hours per day.

35.     Mark's doctor also noted that Mark had already requested the accommodation of receiving training with SFDC.

36.     Defendant never talked with Mark about whether those or any other accommodations would be reasonable.

37.     Instead, Defendant sent Mark to another doctor, Dr. Tranel, for evaluation on December 28.

38.     Defendant's doctor opined that Mark could return to work immediately with some accommodations like not using any new, unfamiliar heavy machinery; accommodations regarding Mark's expected sales goals and documentation requirements; and a transcription service for Mark's computer notes.

39.     Using new, unfamiliar heavy machinery was not part of Mark's job.

40.     Mark did not need a transcription service for his computer notes—he could type notes into the computer.

41.     Mark simply needed training on SFDC to help him know how to properly use the system.

4

42.  Mark *was* meeting Defendant's sales goals, he simply needed assistance meeting the documentation requirements with the SFDC system.

43.  Defendant never spoke to Mark about the accommodations suggested by Dr. Tranel or any other potential reasonable accommodations.

44.  On January 19, 2016, Linda Dinsmore, Defendant's Midwest Director of Human Resources, told Mark that United Rentals would not accommodate him and offered to pay him a severance to resign.

45.  On approximately March 17, Ms. Dinsmore told Mark that Defendant could "accommodate" him by letting him perform his same job in a different state.

46.  Defendant gave Mark the "choice" among North Dakota, Nebraska, and Wisconsin.

47.  On March 25, Mark told Ms. Dinsmore he would accept the LaCrosse, Wisconsin job because it was closest to his home and he did not want to uproot his family while his son was still in high school.

48.  On March 28, Ms. Dinsmore told Mark the LaCrosse position was filled, but the other states were still available.

49.  Mark again told Ms. Dinsmore that he did not want to move away from Dubuque.

50.  Ms. Dinsmore then asked if Mark just wanted to quit.

51.  Mark told Ms. Dinsmore that he did not want to quit.

52.  On April 8, 2016, Ms. Dinsmore sent a letter to Mark firing him.

53.  Kasey Farr was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

54.  Jamie Meyer was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

5

55.     Dan Cioni was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

56.     Linda Dinsmore was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of her employment and agency.

57.     Chris Burlog was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

## COUNT I
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## DISABILITY DISCRIMINATION AND RETALIATION

58.     Plaintiff repleads paragraphs 1 through 57 as if fully set forth herein.

59.     Plaintiff was disabled within the meaning of the Iowa Civil Rights Act.

60.     Plaintiff's brain injury substantially limited one or more of Plaintiff's major life activities including, but not limited to, learning and concentrating.

61.     Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

62.     Plaintiff requested reasonable accommodations.

63.     Defendant failed to accommodate Plaintiff's disability in violation of the Iowa Civil Rights Act.

64.      Defendant failed to engage with Plaintiff in good faith in an interactive process with Plaintiff to assist in accommodating his disability in violation of the Iowa Civil Rights Act.

65.     Defendant discriminated against Plaintiff and disciplined and fired him.

66.     Plaintiff's disability was a motivating factor in the discrimination.

67.     Defendant retaliated against Plaintiff and refused to accommodate him, disciplined him, and fired him.

6

68.     Plaintiff's requests for reasonable accommodation was a motivating factor in Defendant's retaliation.

69.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress, humiliation, stress, loss of confidence, lost enjoyment of life, lost wages and benefits.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages; for appropriate equitable relief, including but not limited to an injunction prohibiting Defendant from continuing to engage in disability discrimination and an order requiring Defendant to adopt and enforce policies and procedures to guarantee equal employment opportunities to disabled individuals; for prejudgment and post-judgment interest; for attorney fees; for the costs and expenses of this action; and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.


/s/ *Whitney Judkins*
FIEDLER & TIMMER, P.L.L.C.
Brooke Timmer AT0008821
brooke@employmentlawiowa.com
Whitney Judkins AT0010357
whitney@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: 515-254-1999
Facsimile: 515-254-9923
ATTORNEYS FOR PLAINTIFF

7

IN THE IOWA DISTRICT COURT FOR DUBUQUE COUNTY

| | |
|---|---|
| MARK SCHNEE,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED RENTALS (NORTH AMERICA), INC.,<br><br>    Defendant. | NO. _____<br><br><br>**AMENDED PETITION AND JURY DEMAND** |

COMES NOW the Plaintiff, and for his cause of action states the following:

## INTRODUCTION

1.      This is an action under the Iowa Civil Rights Act, challenging Defendant's illegal disability discrimination and retaliation against Plaintiff.

2.      Plaintiff Mark Schnee is a resident of Dubuque County, Iowa.

3.      Defendant United Rentals (North America), Inc. is a Delaware corporation doing business in Dubuque County, Iowa.

4.      The acts about which Plaintiff complains occurred in Dubuque County, Iowa.

## PROCEDURAL REQUIREMENTS

5.      On June 15, 2016, within 300 days of the acts of which he complains, Plaintiff filed charges of employment discrimination and retaliation against Defendant with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission.

6.      On January 27, 2017, less than 90 days prior to the filing of the Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Plaintiff's charges of discrimination and retaliation against Defendant.

1

7.     <u>On approximately April 24, 2015, less than 90 days prior to the filing of the Amended</u> <u>Petition, the Equal Employment Opportunity Commission issued a Right to Sue Letter with respect</u> <u>to Plaintiff's charges against Defendant.</u>

## FACTUAL BACKGROUND

8.     In approximately November 2004, Defendant United Rentals (North America), Inc. ("United Rentals") hired Mark Schnee as a Sales Representative at its Dubuque, Iowa location.

9.     On February 7, 2013, Mark suffered a traumatic brain injury ("TBI") in a snowmobiling accident.

10.     The accident damaged the right frontal lobe of Marks' brain.

11.     As a result of the TBI, Mark lost the ability to walk and feed himself for some time.

12.     Because of the TBI, Mark's ability to learn new information; his memory; and his ability to focus, multitask, and process tasks were substantially limited indefinitely.

13.     Following rehabilitation and physical therapy, Mark returned to work in approximately late April 2013.

14.     In approximately late 2012, United Rentals had begun using a new computer system called Salesforce.com ("SFDC").

15.     Because Mark's TBI makes it difficult for him to learn new information, he experienced difficulties working with the new computer system after he returned to work.

16.     Mark asked Defendant for additional training on the system several times following his return to work, but Defendant never provided him any training or assistance.

17.     On August 27, 2014, Defendant disciplined Mark with a First Written Warning.

18.     The warning reprimanded Mark for his response to Branch Manager Kasey Farr correcting an order that had been entered into the system incorrectly.

2

19.     Mark was frustrated and stressed because Defendant was not providing him with advice or help regarding the system.  Mark apologized to Mr. Farr for his response to Mr. Farr's correction.

20.     On December 15, 2014, Defendant disciplined Mark with another First Written Warning.

21.     The warning reprimanded Mark for failing to document things correctly on SFDC, but Defendant still refused to give Mark any additional training on SFDC.

22.     The warning also accused Mark of failing to plan and make the minimum number of daily calls he was required to make for the week of December 1 through 5.

23.     However, in 2014, Mark's sales were higher than any previous year, which would not have been possible if he was not making sufficient sales calls.

24.     In late May or early June 2015, Mark asked District Sales Manager Jamie Meyer for help and training on SFDC.

25.     Mr. Meyer told Mark, "I can't treat you any differently than I treat everyone else!"

26.     On June 4, 2015, Mark was in Wisconsin making sales calls when another employee called Mark and told him Mr. Meyer and District Manager Dan Cioni, were going to be at the Dubuque branch at 1:00 to have a sales meeting with Mark.

27.     No one told Mark there was a sales meeting planned with him that day, so he had no time to prepare for the meeting before he returned to the Dubuque branch.

28.     Mr. Meyer and Mr. Cioni made it clear that they were upset with Mark for not being properly prepared for the sales meeting.

29.     On June 10, 2015, Mr. Meyer and Mr. Cioni gave Mark a Final Written Warning.  The disciplinary action claimed Mark was unprepared for the June 4 meeting, that he was "not performing up to expectations," and that he was not using SFDC appropriately.

3

30.     At the end of the meeting, Mr. Meyer threatened Mark with termination if he did not figure things out soon and accused Mark of falsifying information he put on SFDC.

31.     Mark asked Mr. Meyer and Mr. Cioni if they could reassign him to another position if they did not believe he could perform his current job.

32.     Mr. Meyer and Mr. Cioni told Mark to contact Human Resources.

33.     Mark contacted Human Resources and took FMLA leave for his disability from June 18, 2015, through September 10, 2015, when his FMLA leave expired.

34.     Mark then took additional disability leave after his FMLA leave expired.

35.     On November 24, 2015, Mark's doctor released him to return to work on December 28 with restrictions to work no more than 5 days per week, 8 hours per day.

36.     Mark's doctor also noted that Mark had already requested the accommodation of receiving training with SFDC.

37.     Defendant never talked with Mark about whether those or any other accommodations would be reasonable.

38.     Instead, Defendant sent Mark to another doctor, Dr. Tranel, for evaluation on December 28.

39.     Defendant's doctor opined that Mark could return to work immediately with some accommodations like not using any new, unfamiliar heavy machinery; accommodations regarding Mark's expected sales goals and documentation requirements; and a transcription service for Mark's computer notes.

40.     Using new, unfamiliar heavy machinery was not part of Mark's job.

41.     Mark did not need a transcription service for his computer notes—he could type notes into the computer.

4

42.    Mark simply needed training on SFDC to help him know how to properly use the system.

43.    Mark *was* meeting Defendant's sales goals, he simply needed assistance meeting the documentation requirements with the SFDC system.

44.    Defendant never spoke to Mark about the accommodations suggested by Dr. Tranel or any other potential reasonable accommodations.

45.    On January 19, 2016, Linda Dinsmore, Defendant's Midwest Director of Human Resources, told Mark that United Rentals would not accommodate him and offered to pay him a severance to resign.

46.    On approximately March 17, Ms. Dinsmore told Mark that Defendant could "accommodate" him by letting him perform his same job in a different state.

47.    Defendant gave Mark the "choice" among North Dakota, Nebraska, and Wisconsin.

48.    On March 25, Mark told Ms. Dinsmore he would accept the LaCrosse, Wisconsin job because it was closest to his home and he did not want to uproot his family while his son was still in high school.

49.    On March 28, Ms. Dinsmore told Mark the LaCrosse position was filled, but the other states were still available.

50.    Mark again told Ms. Dinsmore that he did not want to move away from Dubuque.

51.    Ms. Dinsmore then asked if Mark just wanted to quit.

52.    Mark told Ms. Dinsmore that he did not want to quit.

53.    On April 8, 2016, Ms. Dinsmore sent a letter to Mark firing him.

54.    Kasey Farr was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

5

55.     Jamie Meyer was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

56.     Dan Cioni was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

57.     Linda Dinsmore was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of her employment and agency.

58.     Chris Burlog was an employee and agent of Defendant United Rentals (North America), Inc., acting at all material times in the scope of his employment and agency.

## COUNT I
### VIOLATION OF THE IOWA CIVIL RIGHTS ACT
### DISABILITY DISCRIMINATION AND RETALIATION

59.     Plaintiff repleads paragraphs 1 through 57 as if fully set forth herein.

60.     Plaintiff was disabled within the meaning of the Iowa Civil Rights Act.

61.     Plaintiff's brain injury substantially limited one or more of Plaintiff's major life activities including, but not limited to, learning and concentrating.

62.     <u>Plaintiff's traumatic brain injury substantially affected the normal functioning of his brain.</u>

63.     Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

64.     Plaintiff requested reasonable accommodations.

65.     Defendant failed to accommodate Plaintiff's disability in violation of the Iowa Civil Rights Act.

66.     Defendant failed to engage with Plaintiff in good faith in an interactive process with Plaintiff to assist in accommodating his disability in violation of the Iowa Civil Rights Act.

67.     Defendant discriminated against Plaintiff and disciplined and fired him.

6

68.     Plaintiff's disability was a motivating factor in the discrimination.

69.     Defendant retaliated against Plaintiff and refused to accommodate him, disciplined him, and fired him.

70.     Plaintiff's requests for reasonable accommodation was a motivating factor in Defendant's retaliation.

71.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress, humiliation, stress, loss of confidence, lost enjoyment of life, lost wages and benefits.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages; for appropriate equitable relief, including but not limited to an injunction prohibiting Defendant from continuing to engage in disability discrimination and retaliation and an order requiring Defendant to adopt and enforce policies and procedures to guarantee equal employment opportunities to disabled individuals; for prejudgment and post-judgment interest; for attorney fees; for the costs and expenses of this action; and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

72.     Plaintiff repleads paragraphs 1 through 71 as if fully set forth herein.

73.     Plaintiff was disabled within the meaning of the Americans with Disabilities Act ("ADA").

74.     Plaintiff's brain injury substantially limited one or more of Plaintiff's major life activities including, but not limited to, learning and concentrating.

75.     Plaintiff's traumatic brain injury substantially affected the normal functioning of his brain.

7

76. Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

77. Plaintiff requested reasonable accommodations.

78. Defendant failed to accommodate Plaintiff's disability in violation of the ADA.

79. Defendant failed to engage with Plaintiff in good faith in an interactive process with Plaintiff to assist in accommodating his disability in violation of the ADA.

80. Defendant discriminated against Plaintiff and disciplined and fired him.

81. Plaintiff's disability was a motivating factor in the discrimination.

82. Defendant retaliated against Plaintiff and refused to accommodate him, disciplined him, and fired him.

83. Plaintiff's requests for reasonable accommodation was a motivating factor in Defendant's retaliation.

84. As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress, humiliation, stress, loss of confidence, lost enjoyment of life, lost wages and benefits.

85. Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate him for his injuries and damages; for punitive damages in an amount sufficient to punish Defendant and deter it and others; for appropriate equitable relief, including but not limited to an injunction prohibiting Defendant from continuing to engage in disability discrimination and retaliation and an order requiring Defendant to adopt and enforce policies and procedures to guarantee equal employment opportunities to disabled individuals; for prejudgment and post-judgment interest; for attorney fees; for the costs and expenses of this action; and for such

8

other relief as may be just in the circumstances and consistent with the purpose of the Americans with Disabilities Act.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.


*/s/ Whitney Judkins*
FIEDLER & TIMMER, P.L.L.C.
Brooke Timmer AT0008821
brooke@employmentlawiowa.com
Whitney Judkins AT0010357
whitney@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone:  515-254-1999
Facsimile:  515-254-9923
ATTORNEYS FOR PLAINTIFF

IN THE IOWA DISTRICT COURT FOR DUBUQUE COUNTY

| | |
|---|---|
| MARK SCHNEE,<br><br>      Plaintiff,<br><br>vs.<br><br>UNITED RENTALS (NORTH AMERICA),<br>INC.,<br><br>      Defendant. | Case No. LACV106095<br><br><br>**ACCEPTANCE OF SERVICE** |

      I, Jeannie DeVeney, hereby acknowledge receipt and accept service of the Original Notice, Petition and Jury Demand and Amended Petition and Jury Demand on behalf of the above-named Defendant. This acknowledgement is taking place in Kansas City, Missouri on the 1st day of May, 2017.

        s/ *Jeannie M. DeVeney*

Jeannie DeVeney
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO 64106
Telephone: (816) 627-4400
Facsimile: (816) 627-4444
jdeveney@littler.com
ATTORNEY FOR DEFENDANT